Good morning, or afternoon now, and welcome to the Ninth Circuit here at Arizona State University. I thank both counsel for coming to Phoenix, and also thank the Sandra Day O'Connor Law School here at the Arizona State University for having us as your guests. The case for argument this afternoon is Riley versus Filson, and you may proceed. May it please the court, counsel, Jerry Conner on behalf of Respondents Appellant. I think I'm going to try to reserve about four minutes for rebuttal, Your Honor, but I'll keep my eye out. Sure, keep your eye out. I'll try to help you as well. I'm going to try to start this morning on comment. I think everybody here agrees that a mere change in the law alone is not enough to displace a judge. But in terms of applying Rule 60B-6 of the Federal Civil Procedure, this Court from Dulce v. Almeda set out six factors that a court is to consider in determining whether there are extraordinary circumstances about warrant, reconsider, or displacement of a judge. Is a change in the law of those six a necessary one of the six? It is the first factor, Your Honor. Right, but is it also a necessary one? In other words, if there is no change in the law, we don't get to the next five, do we? I wouldn't say that's correct, yes, Your Honor. So when we start on common ground, there may be potentially some disagreement about the change in the law. Whether there is a change in the law, what I'm saying is that assuming there is a change in the law, that by itself is not enough to grant relief under Rule 60B-6. You have to establish that there are extraordinary circumstances. Now, with respect to the question of whether or not there is a change in the law here, I think we fit comfortably in that situation here, because what you have is a situation just like in Babb v. Lozowski, where this court recognized that an intervening decision from a state court on a question of state law is to be treated as intervening authority, or intervening higher authority. But that case was on appeal when the law changed. That wasn't 60B-6. It wasn't 60B-6, Your Honor. But still, it establishes the premise that when there is an intervening judgment, that this court then must treat its prior determination or reading of state law as having been older. So whenever a state court comes to a different interpretation of state law, we must reopen all previous cases that were based on the previous understanding of it? I don't think much, Your Honor. I think that's exactly what the Feltz v. O'Meara analysis is. Let me tell you what my difficulty is, because I want you to be able to address it correctly. Your brief says there's never been a change in the law. The Ninth Circuit got this wrong, and maybe we did. The Ninth Circuit got this wrong from the beginning, and we've been reminding them about that ever since. And now the Nevada Supreme Court agrees with us and keeps saying the Ninth Circuit got it wrong from the beginning. That's not a change in the law. It's exactly the same argument you've been making in this case since it began. You may be right, but it's not a change in the law. I disagree respectfully, Your Honor, because I agree with you that we've said that Nevada law has not changed. But this court's interpretation of the state law, which the federal district court and this court would be bound to follow if the Nevada Supreme Court had not come back and said, no, what you said in Riley is not a correct statement of Nevada law. So Riley would, the underlying opinion in this case, would continue to be governing circuit precedent in the federal court system. But now- Let's whether it's the change of the law. Let's make sure we're all talking, because we have so many cases here. Are you taking the position that Biford is the change of the law case? Biford wasn't any change in the law in Nevada. But Biford was available to the panel, in this case, with society, correct? Correct. In fact, what wasn't, and what has since come back, though, is that in Leavitt v. State, the Nevada Supreme Court looked at this court's interpretation of Nevada law- And said we were wrong. In terms of how you define the elements of first degree murder in Nevada and said, you got this wrong. So what case is the change in the law, then, Judge McKeown? Is it that there has never been a change in the law because the law was always X? Or is it, as they say in Biford, that that was a change in the law? So in Batt v. Wazowski, NECA wasn't a change in the law either. NECA was an intervening decision. But let's answer the question first here with respect to this case, because I want to make sure that we're all talking on the same page as to which cases we're talking about. So Leavitt v. State must, by this court, be treated as intervening high authority that overrules right. Right, and so if we ever get another case involving that issue, we'll have to follow Leavitt. That's a precedential matter. And it may well be that our decision in Riley was wrong. But tell me where the change- What we're having difficulty determining is when the change in the law occurred. Because you tell us that Leavitt merely says what Biford said. Leavitt says what NECA said. Not what Biford said. But Leavitt precipitates a change in this court's- But with NECA we're dealing with a different time period, to be fair, aren't we? We're dealing with the 92 through 2000 period. Here we're dealing with something before 1992. Right, exactly, Your Honor. But what Leavitt says is that you got this wrong with respect to what the status of the law was before 1992. But that's not changing the law. Apparently the Nevada Supreme Court has always believed we got this wrong. So what's the change in the law? The change is to this court's precedent. This court's decision in Riley is now overruled. So you may well be overruled, but that's not a change in the law. The question is what law has changed applicable to this case? Then the governing decision is a law. It's not a change in the law that somebody tells us we got it wrong. I mean, it's educational. I could distinguish the Nevada Supreme Court decisions because they have no discussion in them, but put that aside. Let's assume they're authoritative statements that at the time Mr. Riley was tried, this instruction was okay. But that's not a new position from the Nevada courts, is it? No, it's not. So that's not a change. What you're telling us is we should change our law. So the other way that I would turn from this, though, is then raise the question for me, and I realize that by now it's out of time for us to have raised a Rule 60b-1 motion on a mistake. But I think that this court could recognize that because we filed a claim— But that's not been raised by the state, correct? It hasn't, Your Honor. And so can I ask you, just as a matter of semantics, do you see a difference between a change in the law and intervening precedent? I don't, Your Honor, because the Nevada Supreme Court's decision and what Babs says here is that you have to treat that as overruling this court's precedent. The federal district court would be bound to follow, right? In all future cases. The question is whether the Nevada Supreme Court, by a decision made after one of our decisions becomes final, can require us to go back and undo that decision. That's very different than whether it's set precedent. So tell me what case you have that says we should, in a 60b-6, undo a final judgment because the state Supreme Court now tells us that we were wrong previously. My best case for that, Your Honor, is Babs v. Nevada. But you agree it doesn't deal with that at all. It's undirected appeal. Can I focus a little bit differently here? I want to get the case right, so I'm going to look at this for a second. Nevada argues that Adam v. State, Canopy v. State, and Levitt undermine our—Rodney v. McDaniel's—interpretation of Kern. All three of those cases focused on whether the Nevada Supreme Court required separate definitions of the statutory terms willful, deliberate, and premeditated, which is not the dispositive issue in our 2015 Riley opinion. What we were focused on there was whether deliberation was a discrete element of first-degree murder. So as I look at it, and I'd like your answer, isn't the real issue whether at the time of the Riley trial all three mens rea elements had to be proven beyond a reasonable doubt, and in connection with that, whether any of these cases dealt with that issue? I agree with Your Honor that Kern said there are three elements. What Kern does not do is give separate meaning to deliberate. If you actually go read the Kern decision, and the Nevada Supreme Court addressed this in ECA, if you look at that decision, although they say there's three elements, they discuss the offense of first-degree murder in terms of premeditation, and that's it. But with respect, it just seems like it melds it together. At the time of the trial, which is what we have to look at here, the State had to prove these three elements beyond a reasonable doubt. There's no question about that. So the question we dealt with was whether there was a constitutionally constitutional due process violation because the State in its later iterations of this changed the requirement. In other words, you didn't have to prove each of those elements. Isn't that correct? I disagree, Your Honor, and here's why. When you look at what the Nevada Supreme Court addressed in ECA, they did a survey of Nevada law going all the way back to territorial legislation, and said we have never given the term deliberate, as it appears in the statute, different meaning than premeditated. And that's exactly – but you see, that's – stop right there because it might mean the same thing. Maybe you have superfluous elements, which is a whole other question in criminal law. But that language and the language used throughout Nevada's discussion doesn't tell you about the elements. It tells you about meaning, interpretation, and definition, doesn't it? But that's it, Your Honor. That's the important point is just because the Nevada Supreme Court says there's three elements, that doesn't answer the question. The question is what do those elements mean? And if the instruction that is given sufficiently describes what those three elements mean, then that satisfies the promise. Is there anybody else? As a practical matter, how many individuals are in a situation like Mr. Riley, who has a final conviction in 1991 and also has a Kaslan problem? Do we know the answer to that? I don't off the top of my head, Your Honor. I do know that there is beginning to be a new development with this. And it's not necessarily directed before this court, but now there's – this court has ordered responses to petitions seeking the opportunity to raise secondary success petitions based on Welch v. United States and whether or not Byford had a new flag racial act. That's a separate question. I acknowledge that they raised that as an alternative argument. Is it really the reality that Mr. Riley is a sample of one? I don't know, Your Honor. But realistically, though, as my colleague suggested, when he was tried, each of those elements, which were separately defined at the time, had to be proven beyond a reasonable doubt. The State's trying to change that after the fact, it appears, and we have a due process problem. That's what our first Riley case said. Why is that wrong as to this defendant? It's wrong, Your Honor, because I don't know where in Nevada law prior to Byford the Nevada Supreme Court gave separate meaning to the term deliberate that is not adequately described by the instructions given in this case. But let me return back to where I started, at least. Let's assume for purposes of our discussion that the Riley panel got it wrong as a matter of Nevada law. Is Mika the new law, Your Honor? Levitz, the new law. All that Levitz says is see Mika. I agree, Your Honor. So if there's new law, it must be Mika. I agree, Your Honor. And that's in 2001. Let me finish. I'll let you finish. That was in 2001. And the appeal in this case became final in 2015. Whatever else Mika is, it's not new law to this case, is it? Mika's not, but Levitz is, and what Levitz does. Levitz says, see Mika. And explains that the instruction given in Riley is wrong. Mika doesn't stand for that proposition. The Nevada Supreme Court cited it, but it really doesn't support the proposition. No, it does. And it's an old case. So what I'm saying, though, Your Honor, is that Levitz then, by explaining that this court was wrong in Riley, overrules Riley. And that's irritating because this court has no grounds. With respect, and I was once a state Supreme Court justice, among the many powers of the state Supreme Court justice is not overruling a circuit court decision. You can undermine the reasoning of a circuit court decision to make that decision effectively not precedential anymore, but you agree the state Supreme Court has no power to overrule our decisions. I think that's just the contrary, Your Honor. I think you mean intervening authorities probably would be the more convenient moniker for it. Absolutely. And so it would be, as I wrote in the briefing, if the U.S. Supreme Court, in a case out of the Second Circuit, decided something that then subsequently undermined this court's decision. But that's in the federal system, so probably not a perfect analogy. And it doesn't overrule it. It merely undermines it. That's Judge McKeown's point. When the Supreme Court decides a case inconsistent with one of our prior precedents, it doesn't overrule that precedent. We just are no longer required to follow it because the Supreme Court has undermined it. Respectfully, Your Honor, that's not what Judge Bernia said about it. She said that this court has to treat it as overruling. You're out of time, but I'm going to give you some rebuttal. Thank you, Your Honor. I appreciate it. May it please the Court, counsel. My name is David Anthony. I represent the petitioner, Appelli Billy Ray Riley. I'd like to start by kind of following the outline of the questions because, coincidentally, that's the way that my outline is set up, so I think it works that way. The first thing that I want to talk about, and I think this is a fundamental tension point, is that as we stand here today, there is nothing new. The facts are the same. The law is the same. And therefore, the result must also be the same. Must we find today that Riley was correctly decided? I don't think so, Your Honor. I don't think so. When we're talking about a case that's in the posture of a 60B motion, the issue is not simply whether the court was right or wrong. The factors that the court looks at are, we've already talked about extraordinary circumstances. We also look at whether the court was right at the time that it made the prior ruling. That was the Gonzalez case. That's what Gonzalez teaches us from the U.S. Supreme Court. And what I believe to be true is that the court was right then, and then the court is right now. But you don't need to. You don't need the second part. You don't need the first part. You don't need to convince us the court was right then, do you? I don't think that to avoid the state prevailing, I don't think that I need to prove that the court was right then either, necessarily. Or now. Or now. No, I don't think I need to provide that. It's sufficient for your case to show that nothing has changed. I think that that is where, that was the tension point, and that was the ruling that Judge Jones made at the district court level. And I think that once that question is answered, that there's no change, I think we can stop right there. And that's why I wanted to start with the fact that there hasn't been a change here. You know, one of the difficulties in tracing this somewhat unusual path that the statute has made through the Nevada courts is the mixing and matching of the ward's elements and definitions. So it would help me if you were to take a look at NECIA, or NECA, I guess is the way to say it, and tell us why, as the state argues, that doesn't control now. Well, again, I'm going to agree here with Judge Jones when he said that what we're really talking about is a mischaracterization. So the court talked about the difference between elements and definitions. The fact of the matter is that starting in the Bifert case and looking at those historical jury instructions that we've included, the issue here was never whether there was a definition of deliberation. In fact, to the contrary, if you look at these historical definitions, they don't have a definition of deliberation at all. And that's what Bifert says. Bifert says that before 1992, we had an element called deliberation, but it was in one jury instruction, and it wasn't defined. And as far as I'm concerned, that's not a problem for Mr. Riley, because the question here isn't whether the Constitution demands a particular definition of deliberation. That's a strawman argument, and that's the whole basis for this sentence fragment. I guess I call it a phrase or a sentence fragment that starts in a footnote. It starts in these unpublished cases, and then it migrates to a pro se appeal that the state then moves to publish, and then they bring the Levitt case to the court. So the first point that I would make here is that I think Judge Jones was spot on when he said that that's just a mischaracterization here. The issue isn't the definition of deliberation. The issue is that it's an element. So on that point, many of the cases when they're talking about having a definition, as I understand them, it's sort of if you're going to have one definition, you have to have them all. Correct. Otherwise you imbalance the situation. Correct, and that's precisely what happened in Bifert itself, is that Bifert said it's not fair to have this definition of premeditation and to drain the element of deliberation of any and all meaning. And so that's why they restored the balance by reinvigorating the difference between first and second degree murder. Because in this time period between 1992 and 2000, the Nevada Supreme Court was very candid in Bifert and said, we completely erased the difference between first and second degree murder. That's a big problem. I mean, I don't know, but I anticipate that in the future, that's going to be a vexing issue for the court. Is a petitioner coming to you who committed second degree murder and is on death row? And so, I mean, for those petitioners in 1992 to 2000, that's a serious problem that the court may have to deal with at some point. So now let's go to Mr. Riley, and I'll call him 1991 and before. And what status do you think that gives him that that's the time frame in which his conviction became final in the state? Well, I think that this court's original decision at Riley does a really good job of piecing the pieces together. It talks about the Hearn case, talks about the Bifert case, talks about the Nika case. And if you put all of those together, I think that the court did a very commendable job of harmonizing those different authorities, because they're all looking at something that's somewhat similar. Did Babb overrule Riley? No. I'm looking for the language in it. Are you aware of any language in it? I am not aware of any language. Babb said it overrules Riley? No, Your Honor. In fact, I don't think that could be possible, because Babb preceded Riley in time. So no, I don't see anything like that in the Babb case. But just to answer Judge McHugh's question, I think that the court's prior decision was very deferential to what state law was and what it required at the particular time. And if you look back in time, what you see is that we didn't start going askew until this period in 1992 when the Nevada Supreme Court decided the Powell case. Normally what happens in these cases is the state Supreme Court says, this is the law, and then later we determine whether a jury instruction followed the law. Unfortunately, what we have here is we have it backwards, because the Nevada Supreme Court sustained the Castle instruction, and then they had state law conform to the jury instruction rather than having the jury instruction conform to state law. And that's a big problem. That's the reason why we are where we are with this issue. Is there any problem between 1992, between Powell and Byford? I think there's major problems for any petitioner or anyone convicted of first-degree murder during that time period. There's a major problem. When you say a major problem, the Nevada law, whatever it is, was clear during that time period? Well, I wouldn't concede it was clear, but this court found that it was clear enough to set forth a rule. And the clear rule, at least for priority, was that during that time period, the only element of first-degree murder was, did the person intend to commit the killing, and did they intend death to be the result? That's Powell. That is Powell. Correct. And so that's the rule from Powell. And until Byford, Powell was the rule. Until Byford, Powell was the rule. And then Byford, I think, correctly acknowledged that by under-emphasizing the element of deliberation, we have a situation in Nevada where the Nevada court was very candid. They said we completely erased the difference between first and second degree murder. But that's a state law matter, perhaps. It is a state law matter. This is a long-winded way of asking the question Judge McKeown asked you before. In practical effect, are we only worried now about the cases that occurred before 1992? I think that I always look for the narrowest grounds for decision. And I think that—  Thank you, Your Honor. So the answer to your question then would be yes, the population that we're talking about is the population whose convictions were final before 1992. And who got it. Who got the instruction that I can't pronounce. Kazalon. The Kazalon instruction. That's correct, Your Honor. And that's an important point because the Kazalon instruction was not a statewide instruction before 1992. What I've shown the court in the answering brief with those historical instructions is that the Kazalon instruction was a creature that was unique to Clark County, Nevada. Elsewhere, they weren't using the Kazalon instruction before 1992. Similarly, even in Clark County, certain prosecutors were bringing instruction packets to the court that weren't the Kazalon instruction. So one example I cite in the answering brief is the Robbins case. That's a case that was in the mid-'80s where Clark County wasn't using the Kazalon instruction. So the answer to your question is that we really are talking about a very, very small population. And that doesn't even get to the other questions that we have about whether the issue has been preserved for federal review, whether it's been exhausted. We had a little bit of that interchange with the 28J letters. We talked about the Browning case. We talked about the Petrocelli case, cases where the petitioner didn't exhaust the claim. And so there are a lot of impediments to even qualifying and to getting into this position that Mr. Riley's in. And the other one that we haven't talked about yet is harmless error. That's a real hammer, right? Harmless error is why even clients or even defendants who have the claim and have preserved it, they also lose for that reason. I take it that's not an issue in front of us in this case. That was an issue for the merits panel. Correct, Your Honor. That was an issue for the merits panel. That is not an issue presently before the court. So we're really looking at the 60B civil procedure motion. Absolutely correct, Your Honor. So let me ask you a question I asked your friend in a different way. If we were presented with your client's case today, would we be required to conclude based on the Nevada Supreme Court decisions that the instruction given at the time was correct? I think that you'd be compelled to say that it was not correct for the same reason that I began with, which is that there's no change. You were still right. Wouldn't we be right about Nevada law when the Nevada Supreme Court says we're not? I think you have to look carefully at what they're saying because it's my contention that what they're saying is really based on a bare disagreement, right? Isn't a disagreement inherent in any case where a federal court grants over the habeas corpus? Isn't there a strong disagreement? And secondly, I don't think that there's any sort of an interchange here because of this issue about mischaracterizing the decision in Riley itself. So I would say, in answer to the court's question, that if the case was pending before you right now today, I say that you would come to the very same result, which is that deliberation is an element of the offense and the jury instruction removes the element from the jury's consideration. So if we were looking at this today and we were to read Levitt, which I think is the only published decision among the trio, and the Nevada court – if we were in the Nevada court to say, well, the Ninth Circuit just flatly misunderstands our law, we would just ignore that? I don't think that you would ever ignore anything. But I do think that you would have to look – Phelps talks about looking at the nature of the change itself. And what we're talking about here is an archaeological dig. We're talking about looking 30 years in the past and seeing what was the law at the time. And if you look at those unpublished dispositions, they're cited to the very same published authority that the court relied on in the Riley case. So the Nevada Supreme Court can express disagreement with the result reach. They cite to the same published decisions that the court relies on in Riley. But that doesn't mean that the court would be disrespecting the province of the state court to say what the law is because, frankly, as we sit here now in oral argument, I don't know what the difference is. I don't know what's different today than what was in front of the court in 2015. The facts are the same. The law is the same. If it's a state law question as opposed to a constitutional question, wouldn't we owe a certain deference and respect to the Nevada Supreme Court? You would. But it's always the prerogative of the federal court to say whether or not a jury instruction omits an essential element of an offense. That's Francis C. Franklin. So it's the prerogative of a federal court to do that. And that's what the court did do in the Riley case. It wasn't an issue where the Nevada Supreme Court read the law one way and this court read it another way. This court was extremely deferential to the Nevada Supreme Court. You know, I argued before in the last appeal that the decision in Nika appears to be a subterfuge because there's a major difference between Byford and Nika. But the court nevertheless accepted the premises that came to it about what does Byford do, what does Nika do, what does Herm do. And the court was very deferential and respectful about what the Nevada Supreme Court said the law was. And that's why we have this weird situation now where between 1992 and 2000, there's no difference between first and second degree murder in Nevada. But it would be a really big leap to say that that was always the case. And Byford says that it wasn't the case. Byford says there was a longstanding rule about how deliberation was its own element. And it wasn't defined, but that's the straw man. It wasn't defined for the jury, but it also wasn't removed from the jury's consideration either. And that's what's important. So even if the case was in front of the court today, not in a 6dB, I believe that the court would still be making the same decision that it made in 2015. Thank you. Thank you very much. Mr. Regan, could you put two minutes on the clock, please? Thank you, Your Honor. I'd just like to point out a couple quick things. First, I don't understand how you can say that it's a mischaracterization of this court's opinion. This court clearly said no other instruction in Riley's trial gave independent meaning to deliberate. The fact is that this court found a due process violation because the jury instructions did not give separate meaning to deliberate. Assume we were wrong. Correct. Assume we were wrong. Your brief says there never really was a change in Nevada law. If establishing a change in Nevada law is a prerequisite to prevailing, how can it prevail? I don't think that it's Nevada law that changes, Your Honor. I think it's this court's precedent that changes. And as I explained before, Babb overruled Polk. Not Riley. Babb overruled Polk. I was looking for the words overruled in Babb. Do you think they're in there? They are, Your Honor. I may have missed them. I'll look again. I'm pretty sure I quoted it in the brief. We'll trust you and we'll go look at it. There's two other things that I would like to get to, though. Counsel represents that this was just an issue that was specific to Clark County and really was only a problem in the 1990s. He had this 28-J letter, cites Petrocelli, which is a case out of Washington County from the 1980s. So that's inaccurate. The other thing that I would like to point out is that the Cozumel instruction got its name in the Byford case. Byford says this instruction first appeared in our case law in Cozumel. But if this court goes and looks at Excerpts of Record 413, you will find the text of the premeditation instruction from Herm v. State, and it is the Cozumel instruction. That was the exact issue in Cozumel, or excuse me, in Herm, was whether or not mal support thought and premeditated and deliberate persecution were adequately defined to distinguish each other. That was the issue in Herm. And the instruction that was given in that case is the Cozumel instruction. Thank you. Thank you, Your Honor. Yes, Shirley. I've looked and haven't found a 60 v. 6 case that overturns a habeas grant in a – a habeas grant. Do you have one? In other words, I can understand in a civil context how a change in the law might change the decision. The habeas grant is based on the notion at the time the guy was tried his constitutional rights were violated. Do you have any 60 v. 6 cases that – I don't, Your Honor. Thank you. At least I'm aware of. Thank you. Thank both counsel for your argument this afternoon. The case of Riley v. Filson is submitted. We're going to adjourn just to tidy up our papers and do a few other things, but I think there will also be additional question and answers if you want to stay. Some of the panel is leaving. They've already done their questions and answers, but I will remain after we're able and perhaps Judge Hurwitz can as well. So just to remind you that we won't be answering any questions about this case. So if our lawyers want to leave, you can be sure that we won't be talking about you or your case except to say that we appreciated you coming today. Very helpful arguments. There's a lot of history and briefing here you can appreciate from the argument. Much of what you don't see, of course, happened behind the scenes in briefing, and that's been very helpful to us. Thank you. We're adjourned.
judges: McKeown, M. Smith, Hurwitz